IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**CHRISTINA L.,[1]**

                              Plaintiff,                    Civ. No. 3:23-cv-01529-MTK

        v.                                          **OPINION AND ORDER**

**MARTIN O'MALLEY**,
Commissioner of Social Security

                              Defendant.

_____

**KASUBHAI, District Judge:**

Plaintiff Christina L. ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner") decision denying her applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under Titles II and XVI of the Security Act ("the Act"). This Court has jurisdiction under 42 U.S.C. § 405(g). For the reasons below, the Commissioner's final decision is affirmed consistent with this Opinion.

## PROCEDURAL BACKGROUND

Plaintiff's applications for SSI and DIB were denied initially and upon reconsideration. Tr. 191-95, 196-200, 204-06, 207-09. Plaintiff requested an administrative hearing and appeared

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental parties in this case.

before an administrative law judge (ALJ) on August 11, 2022. Tr. 47-64. In a written decision dated September 7, 2022, the ALJ denied Plaintiff's claim for benefits. Tr. 26-39. The Appeals Council denied Plaintiff's subsequent petition for review, rendering the ALJ's decision final. Tr. 1-7. This appeal followed.

Plaintiff filed an earlier application for disability benefits that was denied after an ALJ decision on April 3, 2018, Tr. 68-84, and affirmed by this Court. Tr. 172-89. The ALJ in this case did not apply the presumption of continuing nondisability to the relevant period in this case, from April 4, 2018, through September 7, 2022. Tr. 26. *See* Acquiescence Ruling 97-4(9), 1997 WL 742758 (concerning effect of prior findings on adjudication of a subsequent disability claim, i.e., presumption of continuing non-disability, per *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)).

## FACTUAL BACKGROUND

Born in 1974, Plaintiff was 44 years old on the application date. Tr. 38.[2] She alleged disability as of December 31, 2011, due to the combined impairments from a 2015 stroke including residual migraines, balance issues, vision obstruction, and memory lapses. Tr. 347.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d

---

[2] "Tr." refers to the Transcript of the Social Security Administrative Record, ECF No. 8, provided by the Commissioner.

771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20

C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), which is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At the fourth step, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2011, the alleged onset date. Tr. 29. At step two, the ALJ determined that Plaintiff had the following severe impairments: neurocognitive disorder, status post cerebrovascular accident, depression, obsessive compulsive disorder (OCD), lumbar spine degenerative disc disease, obstructive sleep apnea, and obesity. *Id*.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled any listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 30.

Prior to step four, the ALJ determined that, despite her impairments, Plaintiff retained the RFC to perform a light work with the following limitations:

> [She can] never crawl or climb ladders, ropes, or scaffolds. She can
> frequently climb ramps and stairs, balance, stoop, kneel, and
> crouch. She can tolerate occasional exposure to temperature
> extremes and atmospheric conditions such as fumes, odors, dust,
> gases, and poor ventilation. She can tolerate no exposure to
> hazards such as unprotected heights and moving mechanical
> machinery. She can understand, remember, and carry out simple
> and detailed tasks that can be learned in 30 days or less. She can
> never perform detailed tasks that require more than 30 days to
> learn. She can never perform work requiring a specific production
> rate, such as assembly line work. She can tolerate occasional
> changes in a routine work setting. She can tolerate occasional
> interaction with the public, coworkers, and supervisors.

Tr. 32.

At step four, the ALJ found that Plaintiff cannot perform any past relevant work. Tr. 37.

At step five, the ALJ found that based on Plaintiff's age, education, work experience, and RFC,

she could perform jobs that existed in significant numbers in the national economy, including

housekeeping cleaner, marker, inspector, and hand packager at entry. Tr. 39. The ALJ therefore

concluded that Plaintiff was not disabled. *Id*.

In this appeal, Plaintiff contends that the ALJ erred by (I) improperly rejecting Plaintiff's

subjective symptom testimony; and by (II) failing to properly evaluate the medical opinion of Mary

Jepson, NP. Pl.'s Opening Br. 8-23, ECF No. 9 ("Pl.'s Br.").

## DISCUSSION

## I.    Plaintiff's Subjective Symptom Testimony

Plaintiff testified that she wakes up with migraines, does not know what triggers them, and

that the only solution for them is to take medication and sleep. Tr. 52, 58. Plaintiff stated that since

her 2015 stroke, she has had problems with her vision as if she is "looking underwater" and that

flashes appear. Tr. 57. She also claims to see "floaters" in her vision and that items change color

for her. *Id*. She testified that she needs to use a walker due to dizziness and to aid her balance. Tr.

59. Plaintiff also testified that she does not leave her house, even to the dumpster, because she does

not think she will "make it back[.]" Tr. 62. In turn, Plaintiff does not know how she "would go out into the working world and resume [her] life from this point." *Id*. She claims to not do any household chores, and that she needs reminders to groom, shower, and brush her teeth. Tr. 60. Her activities of daily living ("ADLs") include using her phone most of the day, watching TV, doing household chores with others, scrapbooking, and doing social activities with her mother. Tr. 1273, 1275, 892, 358, 630, 706, 711, 1332.

The ALJ must follow a two-step process: (1) determine whether any medically determinable impairments ("MDIs") could reasonably be expected to cause the alleged symptoms, then (2) determine whether the allegations concerning intensity, persistence, and limiting effects of the symptoms are consistent with the medical evidence and other record evidence. *See* 20 C.F.R. §§ 404.1529(a)-(c), 416.929(a)-(c). While objective medical evidence is something an ALJ may consider when evaluating symptom testimony, the absence of corroborating objective medical evidence alone is not sufficient to reject a claimant's symptom testimony. *Trevizo v. Berryhill*, 871 F.3d 664, 679 (9th Cir. 2017) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)). An ALJ may reject symptom allegations that are inconsistent with a claimant's ability to perform normal ADLs. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). There are two ways ADLs may support such rejection: (1) the ADLs contravene the claimant's allegations of functional limitations; or (2) the ADLs "meet the threshold for transferrable work skills[.]" *Orn*, 495 F.3d at 639. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally disabling impairment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ first discounted Plaintiff's testimony because the objective medical evidence was inconsistent with her allegations. Tr. 33-36. The ALJ also found Plaintiff's ADLs demonstrated

that her limitations did not exceed those listed in the RFC. *Id*. The Court will address each reason in turn.

### A.    Objective Medical Evidence

To begin, the ALJ found that Plaintiff's most recent applications and subsequent record evidence does not "reveal any significant change or deterioration in [Plaintiff]'s functional capacity since her prior hearing decision which was upheld in federal court." Tr. 33, citing Tr. 65-89, 172-89. The ALJ reasoned that:

> [t]he record shows additional impairments, but does not reveal any significant change or deterioration in [Plaintiff]'s functional capacity since her prior hearing decision which was upheld in federal court.
>
> This evidence does not show a significant change in the residual signs of stroke since the prior decision, only vague references to energy level and general health in reference to obesity, mild visual defect, and no need for a walker. Signs on imaging of the spine were moderate and mild, but the claimant reported she was overall good despite physical complaints, and clinical examination showed normal gait, no weakness, and normal range of motion.

Tr. 33-35 (internal citations omitted).

The Court agrees. Plaintiff continues to make similar allegations regarding her symptoms but the objective evidence the ALJ cites, similar to the 2018 decision, shows direct inconsistencies between her testimony and the medical evidence. *Compare* Tr. 74-77 *with* Tr. 33-36.

Beginning with Plaintiff's allegation of needing a walker, the ALJ first cites a 2018 treatment note from her neurologist showing "[m]ild residual vision field defects. No reason to use walker." Tr. 33, citing Tr. 907. Despite Plaintiff's claims that she needs a walker to get around, the ALJ pointed to a 2019 instance where Plaintiff "admitted to her medical providers that she did not need a walker, but wanted to use one because visual field defects caused her to knock things from shelves." *Id.*, citing Tr. 966. The ALJ next stated that "the record does not establish that

[Plaintiff]'s use of a walker is medically necessary." Tr. 34. May 2022 treatment notes demonstrate that even after being referred to ophthalmology and physical therapy for her history of stroke and balance impairment, the examination showed unremarkable findings, normal gait, no weakness and a normal range of motion. *Id*., citing Tr. 1273-74. The ALJ also addressed Plaintiff's x-rays of her lumbar spine and hips, both of which were normal despite her claims of chronic lumbar pain and weakness in her right lower extremity. Tr. 34, citing Tr. 1359. She also denied any injury or falls. *Id*., citing Tr. 1303.

Regarding Plaintiff's visual limitations, the ALJ cited July 2020 ophthalmology treatment notes demonstrating normal examination findings. Tr. 33, citing Tr. 1251. In August of that same year, her ophthalmologist observed that her visual acuity slightly improved since the July visit, her vision was no longer blurry, and she denied any pain or discomfort. *Id*., citing Tr. 1254. Lastly, the ALJ cited Plaintiff's September 2020 visit with her ophthalmologist, which revealed "decreased vision in the left eye to due to amblyopia" but that it was discovered when she was in the "2nd grade[.]" Tr. 33, citing Tr. 1263. The ALJ further noted that her "macula were unremarkable, the optic nerves were normal, and no abnormalities were seen on dilated fundus examination." *Id*. As recent as May 2022, Plaintiff's physical examination demonstrated intact extraocular movements, normal conjunctivae with her pupils being equal, round, and reactive to light. Tr. 29, citing Tr. 1274-75. The ALJ then concluded that "[t]his evidence does not establish more than mild vision deficits" and that "this evidence does not support finding significant visual limitations or problems with balance to the extent described by [Plaintiff]." Tr. 33.

With regard to Plaintiff's allegations regarding migraines, the ALJ found this impairment to be nonsevere. Tr. 29. The ALJ acknowledged her chronic headaches but found that they improved with treatment. *Id*. As of March 2019, Plaintiff reported that her "cervical headaches

improved, but had a new type of headache occurring only at night and responded to Excedrin." *Id.*, citing Tr. 913. In those same notes, her provider observed that "[s]he thinks her diet plans seems to be the cause of her [headache]." Tr. 913. The ALJ then observed that the following month, her migraines were described as episodic and had improved with no evidence of papilledema.[3] Tr. 29, citing Tr. 920. In September 2021, the ALJ noted her migraines were characterized as not intractable without aura, and a CTA scan of her head and neck done in October 2021 showed normal findings with "no intracranial abnormality." Tr. 29, citing Tr. 1366. Finally, the ALJ found that Plaintiff was instructed to continue her normal migraine medication as of May 2022, and concluded that the "evidence shows [Plaintiff]'s migraines improved with treatment and does not suggest they result in significant limitations of basic work activity." Tr. 29, citing Tr. 1275.

Finally, the ALJ addressed Plaintiff's mobility issues as they relate to her obesity. The ALJ acknowledged that Plaintiff's BMI in 2018 was 51.02 kg/m$^2$, but also demonstrated on exam that "she was seated comfortably in no acute distress, no acute respiratory distress, no rebound or guarding, no joint swelling, and had symmetric use of all four extremities." Tr. 34, citing Tr. 1236. In February 2019, her BMI had improved to 48.74 kg/m$^2$, but she was not a candidate for weight loss surgery because her "sleep study showed mild to moderate obstructive sleep apnea" and in order to qualify, she "had to show she was using a CPAP machine every night for at least four hours[.]" *Id.*, citing Tr. 1235, 895. The ALJ also noted that Plaintiff did not specify any limitations

---

[3] Papilledema describes swelling of the optic disc, the area where the optic nerve enters the eye, due to an increase in pressure within the skull. The optic nerve carries visual information from the eye to the brain, where the images are interpreted. Papilledema can result in permanent damage to the optic nerve and eventually blindness. Barrow Neurological Institute, *Papilledema*, BARROWNEURO.ORG, https://www.barrowneuro.org/condition/papilledema/ (last visited August 30, 2024).

or symptoms regarding obesity, but that she "expressed goals such as improving overall health, increasing activity, having more energy, and wearing stylish clothes." *Id*., citing Tr. 893.

Plaintiff argues the ALJ failed to provide clear and convincing reasons in discounting her testimony regarding visual impairments, her need to use a walker, and her physical and mental dysfunction. Pl.'s Br. at 13. Plaintiff first takes issue with the ALJ's characterization of Plaintiff's eye examination findings, reasoning that "[b]ecause Plaintiff's visual impairments were caused by an injury to her brain caused by her stroke, it would be expected that her eye examination was normal." *Id*. at 13-14. Plaintiff substantiates her argument with the fact that she was referred to a neuro-ophthalmologist who, from Plaintiff's standpoint, stated "that her symptoms were stroke related." Pl.'s Br. at 14. This is a mischaracterization of the record. The October 2022 report from Reid L. Wilson, M.D., the neuro-ophthalmologist, stated that Plaintiff has "long-standing poor vision in left eye 'since birth'" and that this is "likely refractive due to high astigmatism in left eye[.]" Tr. 15. Dr. Wilson further observed myopia of both eyes "with moderate astigmatism in right eye, high astigmatism i[n the] left eye. Topography [i]s regular[.]" *Id*. Dr. Wilson acknowledged her subjective visual disturbances, suspected that her symptoms may be related to her prior stroke, but found "[n]ormal alignment, motility, and color vision. Intraocular exam and OCT RNFL also reassuring" and recommended she return in one year. *Id*. Plaintiff is correct that the neuro-ophthalmologist did not rule out that the visual impairment and associated symptoms could be related to her 2015 stroke, but there was no definitive diagnosis or statement that her vision issues were related to the stroke, nor did Dr. Wilson form a plan to alleviate her symptoms or gather more information on the issue. The examinations done by Dr. Wilson proved "reassuring" enough that he wanted to see Plaintiff back in one year. Tr. 15. Even with consideration of this evidence, it fails to establish that the ALJ committed a reversible error

regarding Plaintiff's subjective symptom testimony. The only argument Plaintiff offers, whether it regards her visual impairments, need for a walker, or her mobility issues, is that the Court should consider a different interpretation of the evidence. *See* Pl.'s Br. at 14-15 (explaining that the record demonstrates Plaintiff's need for a walker due to her dizziness/imbalance and that her obesity contributes to her mobility issues). As discussed, the ALJ cited evidence that directly contradicts Plaintiff's claims regarding her visual impairments, migraines, need for a walker and other mobility issues. Plaintiff urges the Court to adopt her interpretation of the evidence, but the ALJ's finding is supported by substantial evidence. *See Orn*, 495 F.3d at 630.

### B. Activities of Daily Living

The ALJ next rejected Plaintiff's subjective symptom testimony on the basis that her ADLs were inconsistent with her reports that her impairments significantly limited her daily activities. An ALJ may use ADLs to discredit a claimant's testimony where the activities: (1) meet the threshold for transferable work skills; or (2) contradict the claimant's testimony. *Orn*, 495 F.3d at 639. A claimant, however, need not be utterly incapacitated to receive disability benefits, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to his or her credibility).

The Ninth Circuit is clear that a direct contradiction between a claimant's asserted limitation and specific medical records reflecting an absence of that same asserted limitation may be particularly probative of a claimant's credibility. *See Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (although the claimant asserted an inability to ambulate without a walker, medical records proved the contrary); *see also Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d

1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony").

Here, the ALJ discussed how Plaintiff participates in household chores with others, watches television, scrapbooks, and partakes in social activities with her mother. Tr. 34, 36, citing Tr. 892. The ALJ concluded that these ADLs were inconsistent with the severity of the alleged symptoms. Tr. 34-36. Plaintiff testified she has extreme visual impairments, must socially isolate, and cannot leave her home. Tr. 52-62. However, the record shows inconsistencies with this testimony. *See* Tr. 623 (describing her participation in an online crafting group); Tr. 1273, 1275 (Plaintiff telling her providers she engages in screen time "all day" and their recommendation for her to lower that time to two-hour intervals with other activities in-between); Tr. 1273, 1333 (Plaintiff's participation in Margarita Mondays with her mother); Tr. 892 (Plaintiff "has done a lot of reading, including the Bariatric Surgery Notebook"); Tr. 358, 631, 706, 711 (Plaintiff's ability to do her own laundry). These contradictions directly undermine Plaintiff's testimony, similarly to the type in *Smartt*. In sum, the ALJ gave clear and convincing reasons for discrediting Plaintiff's subjective symptom testimony, those being contradictory medical evidence and her ADLs.

## II.    Medical Opinion

Plaintiff takes issue with the ALJ's consideration of the medical opinion provided by Mary Jepson, NP. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other

factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. *Id*. In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. *Id*. When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

NP Jepson provided a physical capacity assessment on July 11, 2019. Tr. 1284-88. In her assessment, NP Jepson limited Plaintiff to sitting, standing, and walking less than two hours, lifting and carrying ten pounds occasionally, and indicated she needs unscheduled breaks, cannot work even a low stress job, and would be absent from work more than three days from work per month. *Id*. NP Jepson also opined that Plaintiff cannot maintain attention and concentration for even simple two-step tasks for more than two-thirds of a workday. *Id*. NP Jepson stated that Plaintiff's symptoms are exacerbated by overstimulating environments like the grocery store and that her functional impairments are worse with even "mild stress[.]" Tr. 1286. NP Jepson's prognosis for Plaintiff was "guarded" because her "deficits have been ongoing with minimal improvement since her stroke[.]" Tr. 1287.

/ / /

/ / /

The ALJ found NP Jepson's opinion to be "unpersuasive." Tr. 37. The ALJ reasoned that her opinion was supported, but not consistent with the rest of the record. *Id*.; *see* 20 C.F.R. § 404.1520c(b)(2). Specifically, the ALJ stated:

> [NP Jepson's opinion] is supported by residual effects of stroke in 2015, occupational therapy evaluation in June 2019, and diagnosis of OCD. However, it is not consistent with [Plaintiff]'s longitudinal treatment history, the objective findings, and her performance on physical and mental status exams. It is also not consistent with the assessments of the State Agency medical and psychological consultants.

*Id*.

Plaintiff takes issue with the ALJ's analysis of the consistency factor of the medical opinion analysis. Pl.'s Br. at 20. She contends that the ALJ failed to provide any articulation to explain why NP Jepson's opinion was inconsistent with the record. *Id*. To support this argument, Plaintiff provides a summary of evidence from the record to refute the ALJ's conclusion, however the ALJ's analysis of the consistency factor is supported by substantial evidence.

The ALJ adequately addressed the consistency of NP Jepson's opinion when finding it unpersuasive. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). First, the ALJ found NP Jepson's opinion conflicted with the opinion from Dr. Wiggins, who found Plaintiff would be capable of light exertion and limited to occasional stooping, kneeling, crouching, and crawling, no climbing ladders, ropes, or scaffolds and no exposure to hazards. Tr. 37, citing Tr. 98-131. Second, the ALJ found NP Jepson's opinion conflicted with the opinion from Dr. Bernardo, who found Plaintiff would be capable of light exertion with frequent climbing of ramps and stairs and never climbing ladders, ropes, or scaffolds; occasionally balancing and crawling; frequently stooping, kneeling, and crouching; but no exposure to hazards. *Id*., citing Tr. 132-50, 153-71. Third, the ALJ found NP Jepson's opinion

conflicted with Drs. Friedburg and Kaper, who limited Plaintiff to simple routine tasks and

occasional social interaction with the general public. *Id*., citing Tr. 98-131, 132-50, 153-71.

The ALJ found Drs. Wiggins and Bernardo's opinions generally persuasive because they

were:

> supported by reference to a baseline with only mild visual field
> defect, no reason to use a walker, negative Romberg test, and no
> loss of motor strength, sensation, or coordination. They are also
> consistent with evidence since these sources reviewed the record,
> including x-rays showing normal hips, lumbar MRI showing
> moderate facet joint arthritis and mild disc bulge, and examination
> showing normal gait and no weakness.

Tr. 37.

However, the ALJ included more limitations in Plaintiff's RFC[4] due to "recent evidence of [a]

spinal impairment" which warranted "further environmental and postural restrictions than

acknowledged by these sources." *Id*. Similarly, the ALJ found Drs. Friedburg and Kaper's

opinions to be persuasive because they were:

> supported by reference to records showing [Plaintiff] was able to
> perform self-care and share household chores with other family
> members, [had] intact memory on mental status examination,
> cooperative behavior, good insight, stable cognition, and improved
> OCD symptoms. They are also consistent with treatment records
> showing good coping skills and controlled depression and anxiety
> with psychotherapy, but other records reflect limited stress
> tolerance and difficulty involving conflicts with others which
> warrant additional limitations as outlined above.

*Id*.

---

[4] The inclusion of this limitation in the RFC assessment was a benefit for Plaintiff and its
addition did not present any harm or alter the outcome of the ALJ's disability findings. *See
Molina*, 674 F.3d at 1115 (error is harmless when it is negligible to the nondisability
determination).

Plaintiff argues the ALJ erred by relying on these opinions because the state agency doctors' prior administrative medical findings were formulated without the benefit of reviewing Plaintiff's June 12, 2019, occupational therapy evaluation. Pl.'s Br. at 20, citing Tr. 108-10, 125-27. Plaintiff also argues that the ALJ erred by relying on the opinions of Drs. Friedburg and Kaper because they did not have the benefit of reviewing Plaintiff's medical records from 2020-2022 showing "an increase in Plaintiff's mental health symptoms[.]" *Id*., citing Tr. 1193 (Plaintiff's subjective report to a mental healthcare provider), 409 (letter from Plaintiff's sister), 1330 (treatment notes addressing anxiety).

The performance from occupational therapy and the record cites addressing Plaintiff's mental health all occur after the relevant period, however, and do not meaningfully undermine the persuasiveness of Drs. Wiggins, Bernardo, Friedburg, and Kaper's opinions. Furthermore, the ALJ found NP Jepson's opinion inconsistent with other providers' notes reflecting Plaintiff's normal mental status examination findings, her reduction in care as a response to successful mental health treatment, and improvement in symptoms with therapy and medications. Tr. 35, citing Tr. 987, 873, 892, 1193-94; Tr. 36, citing Tr. 102, 1274, 1325, 1330. Lastly, the ALJ found NP Jepson's opinion inconsistent with Plaintiff's physical examinations and other objective evidence. *See* Tr. 37; Tr. 33, citing Tr. 907, 966, 1300, 1298-99, 1255, 1263; Tr. 34, citing Tr. 1274 (physical examination showing normal range of motion and gait, with no motor weakness). Ultimately, the Court concludes that the ALJ sufficiently addressed the consistency and supportability factors, and supported his decision to discount NP Jepson's opinion with substantial evidence.

/ / /

/ / /

**<u>CONCLUSION</u>**

The Commissioner's decision in connection with Plaintiff's December 26, 2018,

applications for SSI and DIB is affirmed consistent with this Opinion and Order.

DATED this <u>12th</u> day of December 2024.


<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge